IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DAVID W.,

          Plaintiff,

    v.                             Civil Action No.
                                 5:22-CV-0462 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF | |
| AMDURSKY, PELKY LAW FIRM<br>26 East Oneida Street<br>Oswego, NY 13126 | AMY CHADWICK, ESQ. |
| FOR DEFENDANT | |
| SOCIAL SECURITY ADMIN.<br>OFFICE OF GENERAL COUNSEL<br>6401 Security Boulevard<br>Baltimore, MD 21235 | HEETANO SHAMSOONDAR, ESQ. |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on July 13, 2023, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

    3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

*[signature]*
David E. Peebles
U.S. Magistrate Judge

Dated:    July 17, 2023
           Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID W.,

                                          Plaintiff,

-v-                                       5:22-CV-462

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
------------------------------------------------------------x
```

## DECISION TRANSCRIPT
### BEFORE THE HONORABLE DAVID E. PEEBLES
July 13, 2023
100 South Clinton Street, Syracuse, New York


For the Plaintiff:

    AMDURSKY, PELKY LAW FIRM
    26 East Oneida Street
    Oswego, New York 13126
    BY:  **AMY CHADWICK, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    6401 Security Boulevard
    Baltimore, Maryland 21235
    BY:  **HEETANO SHAMSOONDAR, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and all counsel present by video:  Time
2     noted:  11:31 a.m.)
3          THE COURT:  All right.  Let me begin by thanking
4     counsel for excellent presentations.  I've enjoyed working with
5     you and found this case to be fascinating.
6          I have before me a challenge by plaintiff to an
7     adverse determination by the Commissioner of Social Security
8     finding that he was not disabled at the relevant times and
9     therefore ineligible for the benefits for which he applied.
10         The background is as follows:  Plaintiff's date of
11    birth is August of 1972.  He is currently 50 years old.  He was
12    46 years old at the time of his application for benefits on
13    March 26, 2019.  He stands 5'6" in height and weighed at various
14    times between 240 and 266 pounds.  Plaintiff lives in Oswego
15    with his mother and he has previously lived in Fulton.
16    Plaintiff has a girlfriend who lives nearby.  Plaintiff has an
17    8th grade education and, while in school, was placed in special
18    education.  He testified that he can read and write, but he has
19    comprehension issues.  Plaintiff is learning to drive.  His
20    girlfriend is teaching him, or was, at the time of the hearing.
21         Plaintiff stopped working in September of 2006.  From
22    2000 to 2006, he worked as a laborer at a car wash.  In the
23    past, he has also cut hair and worked briefly in sales at a
24    RadioShack outlet.
25         Mentally, plaintiff suffers from major depressive

1  disorder, anxiety disorder, posttraumatic stress disorder, or
2  PTSD, schizoaffective disorder, personality disorder, a learning
3  disability, intellectual disability, claustrophobia, and
4  substance and cannabis use and abuse.  Plaintiff suffers at
5  various times from audio and visual delusions and
6  hallucinations.
7           Plaintiff has at least one prior suicide attempt,
8  although, at page 1240 of the Administrative Transcript, there's
9  a reference to as many as four efforts to commit suicide by
10 cutting his wrists.  Plaintiff has, in the past, expressed some
11 suicidal ideation, mostly described as passive, although many,
12 if not most, of the treatment records that I reviewed show no
13 suicidal or homicidal ideation.
14          Physically, plaintiff suffers from obesity, also
15 vasovagal syncope, which I understand is a condition that leads
16 to fainting.  It's usually not harmful and not a sign of a more
17 serious problem.  It has to do with the nerves that connect the
18 heart and blood vessels.  The plaintiff also suffers from neck
19 pain, lumbago, hypertension, hyperlipidemia, and in September of
20 2019, he fractured his fourth metacarpal bone.
21          Plaintiff has received services from Oswego Hospital
22 Behavioral Services for over 25 years.  He sees Physician's
23 Assistant Amy McCune and LMSW Rhonda O'Connor bi-weekly,
24 although, there were other therapists that came before Ms.
25 O'Connor.  Plaintiff has been hospitalized three times.  The

1    latest was in February of 2019.
2              In terms of activities of daily living, plaintiff is
3    able to dress, bathe, groom, cook, clean, do laundry, he shops
4    every two weeks, he can use public transportation, he watches
5    television, listens to the radio, he mixes music, he plays card
6    and board games, he cares for their pet cat, he attends church,
7    and states that he gets along with family and friends.
8    Plaintiff smokes marijuana twice daily, which he claims helps
9    with panic attacks, PTSD, and hallucinations.  He is a former
10   cigarette smoker, but does not currently, at least at the time
11   of the hearing, smoke cigarettes.
12             Procedurally, plaintiff applied for Title XVI
13   Supplemental Security Income benefits on March 26, 2019,
14   alleging an original onset date of September 30, 2006.  That, of
15   course, was amended to the date of his application.  I note that
16   there was, apparently, a prior application filed by the
17   plaintiff on December 18, 2014.  That was denied at the
18   Administrative Law Judge level on December 14, 2016.
19             In support of his Title XVI application, plaintiff
20   claimed to be disabled due to PTSD, anxiety, bipolar disorder,
21   and high blood pressure.  That is at 336 of the Administrative
22   Transcript.  A hearing was conducted on April 6, 2021, by
23   Administrative Law Judge, or ALJ, Jennifer Gale Smith.  A
24   vocational expert, as well as the plaintiff, testified at that
25   hearing.

1              On April 14, 2021, ALJ Smith issued an adverse
2    determination, finding that plaintiff was not disabled at the
3    relevant times.  That became a final determination of the agency
4    on March 22, 2022, when the Social Security Administration
5    Appeals Council denied plaintiff's request for a review of that
6    finding.  This action was commenced on May 5, 2020, and is
7    timely.
8              In her decision, ALJ Smith applied the familiar
9    five-step sequential test for determining disability.  At step
10   one, she noted that plaintiff had not engaged in substantial
11   gainful activity since the date of his application.
12             At step two, she concluded that plaintiff does suffer
13   from severe impairments that impose more than minimal
14   limitations on his ability to perform basic work functions,
15   including vasovagal syncope, obesity, major depressive disorder,
16   anxiety disorder, posttraumatic stress disorder, schizoaffective
17   disorder, personality disorder, learning disability,
18   intellectual disability, and history of substance abuse and
19   cannabis abuse.
20             Proceeding to step three, the Administrative Law
21   Judge concluded that plaintiff's conditions do not meet or
22   medically equal any of the listed presumptively disabling
23   conditions considering listing 11.02, as well as the various
24   listings in part 12.  In making that finding, the Administrative
25   Law Judge went through the psychiatric review technique,

1   examined the so-called B criteria of the listings, and concluded

2   that plaintiff has moderate limitations in all four of the

3   relevant domains and no extreme or marked limitations.

4               The Administrative Law Judge then analyzed the

5   record, including the medical opinions contained in the record,

6   as well as considering plaintiff's subjective reports of

7   symptomology.  At step 4 -- well, I take that back.  She then

8   concluded that plaintiff retains the residual functional

9   capacity to perform light work with a physical limitation, which

10  is not relevant to our discussion, as well as significant

11  limitations on the mental capacity of the plaintiff, noting that

12  claimant should work at simple, routine, and repetitive tasks.

13  Claimant should work in a low stress job defined as occasional

14  decisionmaking, occasional judgment required, and occasional

15  changes in the work setting.  Claimant should work at goal

16  oriented work rather than production pace rate work.  Claimant

17  should have occasional contact with coworkers, supervisors, and

18  the public.  The claimant should work at a job with a language

19  GED of one.  The claimant should have no more than occasional

20  concentrated exposure to respiratory irritants such as dust,

21  odors, smoke, fumes, and gases.

22              Applying that residual functional capacity at step

23  four, ALJ Smith concluded that plaintiff did not have any past

24  relevant work to consider and proceeded to step five where, with

25  the benefit of a vocational expert's testimony, she concluded

1  that plaintiff is capable of performing available work in the
2  national economy, citing as representative positions those of
3  garment sorter, laundry worker, and sorter (agricultural
4  produce) and, therefore, concluded that plaintiff was not
5  disabled at the relevant times.
6           As you know, the Court's function at this juncture is
7  limited to determining whether correct legal principles were
8  applied and the resulting determination is supported by
9  substantial evidence, which is defined as such relevant evidence
10 as a reasonable person would conclude sufficient to support a
11 fact.  The Second Circuit Court of Appeals has observed the
12 deferential nature of this standard in *Brault v. Social Security*
13 *Administration Commissioner*, 683 F.3d 443 from the Second
14 Circuit, 2012, more recently affirmed, or reaffirmed, in *Schillo*
15 *v. Kijakazi*, 31 F.4d 64 from April 6, 2022.  In those decisions,
16 the Second Circuit noted that it is an extremely deferential
17 standard, even more so than the clearly erroneous standard that
18 lawyers are familiar with.  In *Brault*, the Court observed that
19 the substantial evidence standard means once an ALJ finds a
20 fact, it can be rejected only if a reasonable factfinder would
21 have to conclude otherwise.
22          In this matter, plaintiff raises several contentions,
23 some of which are intertwined.  He challenges the Administrative
24 Law Judge's listings analysis under part B of the relevant
25 listings and concludes that he has either extreme or marked

1  limitations in the domains of concentration, persistence, and
2  pace and adapting and managing oneself.  He also contends that
3  the Administrative Law Judge, when reviewing the records to
4  support her conclusion, essentially cherry picked and recounted
5  an inaccurate and incomplete recitation of the mental health
6  records.  He also challenges the weight provided to the various
7  medical opinions in the record and argues that it was improper
8  to elevate the opinions of the state administrative determiners
9  and the examining consultative doctor, Dr. Shapiro, over
10 plaintiff's therapist.
11        She also -- he also challenges the evaluation of
12 plaintiff's symptoms and concludes that the residual functional
13 capacity finding is flawed and that the Administrative Law Judge
14 should have accepted therapist O'Connor's opinion, particularly
15 in the areas of being off task and being absent from work.
16        I'll make two observations before I analyze the
17 Court's thinking.
18        First, it is plaintiff's burden through step four to
19 prove disability and, of course, at step five, we know that the
20 burden shifts to the Commissioner.
21        Second, this is an extremely limiting residual
22 functional capacity finding, particularly from a mental health
23 point of view, and the focus of plaintiff's challenge is on the
24 mental aspects of the RFC finding.
25        Turning first to the listings argument, the

1   psychiatric review technique under the listings examines four

2   domains, which include the understanding, remembering, or

3   applying information; interacting with others; concentration,

4   persistence, and maintaining pace; and adapting or managing

5   oneself.  Under the B criteria, there must either be an extreme

6   limitation in one of those four areas or marked limitations in

7   two of those areas.

8           The definitions of extreme limitation is the

9   inability to function independently, appropriately, or

10  effectively, and on a sustained basis.  Marked limitation is

11  defined under those regulations as being seriously limited in

12  the ability to function independently, appropriately, or

13  effectively, and on a sustained basis in the particular domain.

14  In this case, the Administrative Law Judge outlined her findings

15  regarding the B criteria at pages 14 and 15 of the

16  Administrative Transcript, finding moderate limitation in all

17  four.  In arriving at that conclusion, she relied on treatment

18  provider notes, the consultative examination report of Dr.

19  Shapiro, plaintiff's fairly robust activities of daily living,

20  and his function report.

21          The finding is clearly supported by the state

22  administrative determination of Dr. E. Kamin on July 1, 2019.

23  At page 103 of the Administrative Transcript, Dr. Kamin

24  concludes that plaintiff has moderate limitations in

25  understanding, remembering, and applying information and in

1   concentration, persistence, and pace, and mild limitations in
2   interacting with others and adapting or managing oneself.  That
3   finding was affirmed later by Dr. G. Brown on October 2, 2019.
4   That appears at page 1133 of the Administrative Transcript.  So
5   there is -- there is evidence to support the listing
6   determination of the Administrative Law Judge.
7           The Court -- I'll note in passing that the
8   Administrative Law Judge found that subsection A of 12.04 was
9   not met and that the C criteria of the various listings were not
10  met and plaintiff has not challenged those findings, and any
11  such challenge would now be waived.
12          In essence, plaintiff is asking the Court to reweigh
13  the evidence in his favor, something that is improper.  I have
14  reviewed carefully the evidence cited by the Administrative Law
15  Judge and find that the determination is supported by
16  substantial evidence and plaintiff cannot show that a reasonable
17  factfinder would have had to reach an opposite conclusion.
18          The next challenge concerns the evaluation of mental
19  health treatment records.  After reviewing the records, the
20  Administrative Law Judge found that despite numerous diagnoses,
21  the claimant's mental status examinations had been, for the most
22  part, within normal limits, though his mood is, at times,
23  anxious or depressed.  She also noted that to the extent that
24  the claimant has reported hallucinations, he has reported that
25  they're not threatening.  This finding was at page 17 of the

1   Administrative Transcript.
2            The Administrative Law Judge has somewhat of a
3   cursory discussion of the relevant records.  The treatment
4   records, which I have reviewed carefully, appear at Exhibits 1F,
5   2F, 3F, 5F, 12F, 16F, 18F, 19F, 21F, and 23F.  Many show,
6   indeed, normal exams.  In many cases, hallucinations and
7   delusions are denied.  In others, while they are mentioned, they
8   are listed as non-threatening.  For the most part, suicidal
9   ideation is denied, although there were a couple references to
10  passive suicidal ideation.  There are a few outliers, but for
11  the most part, those records support the determination.  I've
12  reviewed them carefully and many, many, many of the findings
13  noted in the exhibits that I just mentioned show normal exams,
14  denial of delusions and hallucinations and paranoia.  He was
15  advised to quit marijuana on November 2, 2016.  That's at page
16  445.  There are indications of hallucinations and delusions, but
17  nothing that plaintiff can't handle, I think was the one
18  reference that I saw.
19           So I don't find any error in the Administrative Law
20  Judge's reliance upon the mental health treatment records and
21  that what the plaintiff is seeking is to have the Court reweigh
22  the evidence, which is something that I'm not prepared to do.  I
23  find that substantial evidence supports the residual functional
24  capacity and mental health component and am unable to say that
25  no reasonable factfinder could reach the RFC of the

1   Administrative Law Judge based upon the treatment notes.
2           The next argument centers upon the treatment of
3   medical opinion evidence in the record.  Because the application
4   for benefits was filed after March of 2017, the case is governed
5   by the amended regulations which took effect for applications
6   filed after that date.  Under those regulations, an ALJ does not
7   defer or give any specific evidentiary weight, including
8   controlling weight, to any medical opinions or prior
9   administrative medical findings, including those from a treating
10  medical source.  Instead, the ALJ must consider the opinions
11  using the relevant factors specified, particularly considering
12  and articulating in the decision how supportability and
13  consistency of those opinions is found.  The ALJ is also
14  permitted, but not required, to explain how he or she considered
15  the other relevant factors, which include the source's
16  relationship with the claimant, specialization of the source, if
17  any, and other factors tending to support or contradict the
18  medical opinion.
19          In this case, I've discussed already Dr. Kamin's
20  opinion from July 1, 2019.  It's at page 97 to 109 of the
21  record.  It was affirmed by Dr. Brown at 14F.  The
22  Administrative Law Judge found it to be persuasive, but found
23  greater limitations than those determined by Dr. Kamin.  That's
24  at page 19.  The discussion of Dr. Kamin's opinion could have
25  been somewhat more fulsome, but I believe it adequately

1  addresses the two required conditions of supportability and
2  consistency.
3         Dr. Shapiro prepared a report based upon her
4  examination of the plaintiff on June 24, 2019.  It appears at
5  984 to 988 of the Administrative Transcript.  The medical source
6  statement finds no limitations in certain areas, mild to
7  moderate limitations in understanding, remembering, or applying
8  complex directions and instructions, mild to moderate
9  limitations using reasoning and judgment to make work-related
10 decisions, mild to moderate limitations in interacting
11 adequately with supervisors, coworkers, and the public, mild to
12 moderate limitations sustaining concentration and performing a
13 task at a consistent pace, no limitations on sustaining an
14 ordinary routine and regular attendance at work, moderate
15 limitation regulating emotions, no limitations maintaining
16 personal hygiene and wearing appropriate attire, no limitations
17 being aware of normal hazards and taking appropriate
18 precautions, fully supportive of the residual functional
19 capacity determination and consistent with both the treatment
20 notes that were reviewed and Dr. Kamin's opinion.
21        In my view, the request now of the plaintiff is
22 simply asking that the Court reweigh the evidence differently,
23 something that I'm not inclined to do, nor should I under *Veino*
24 *v. Barnhart*, 312 F.3d 578 from the Second Circuit, December 10,
25 2002.  The RFC is even more limiting like it was with regard to

1   Dr. Kamin.  It's also more limiting than Dr. Shapiro's opinion.
2           Therapist O'Connor gave an opinion on March 10, 2020.
3   It appears at pages 1174 to 1179 of the Administrative
4   Transcript.  It is extremely limiting.  It finds extreme
5   limitation in several areas, including completing a normal
6   workday and workweek without interruptions from
7   psychologically-based symptoms, and perform at a consistent pace
8   without an unreasonable number and length of rest periods, and
9   an extreme limitation is noted in other areas, as well.  That's
10  defined as not able to function in this area independently,
11  appropriately, effectively and on a sustained basis.  This
12  represents a degree of limitation not compatible with any
13  gainful activity.  There are also four findings of marked
14  limitation, which is defined that functioning in this area
15  independently, appropriately, effectively, and on a sustained
16  basis is seriously limited.  It is clearly inconsistent with the
17  residual functional capacity determination.
18          Therapist O'Connor also opined that plaintiff is
19  likely to be absent from work five days or more and off task
20  more than 30 percent of the workday.  The Administrative Law
21  Judge examined that opinion on page 19 of the transcript.  It's
22  noted that it is a checkbox opinion form, and although I know
23  from the Second Circuit's decision in *Hogan* that that is not in
24  and of itself alone a basis to reject the opinion, it is still a
25  consideration if it does not include an explanation that would

1   correlate the limitations to plaintiff's condition.
2           The Administrative Law Judge found it to be
3   inconsistent with even therapist O'Connor's findings, the
4   faithful attendance at therapy, the desire to attend group
5   sessions, and inconsistent with the opinions of Doctors Shapiro,
6   Kamin, and Brown.  I don't find any error in the evaluation of
7   therapist O'Connor's opinion.
8           The last issue raised essentially concerns the
9   examination and evaluation of plaintiff's subjective reports of
10  symptomology.  It is well known that that examination is made
11  pursuant to the guidelines set out in Social Security Ruling, or
12  SSR, 16-3p and the evaluation is two-step.
13          In the first step, Administrative Law Judge Smith
14  found that plaintiff's conditions could reasonably be expected
15  to result in the limitations claimed by the plaintiff, but found
16  that the plaintiff's claims were not fully supported.  And in
17  doing that, he looked at the relevant factors, including daily
18  activities; location, duration, frequency, and intensity of pain
19  or other symptoms; factors that precipitate or aggravate the
20  claimant's symptoms; type, dosage, effectiveness, and side
21  effects of medication; treatment other than medication used to
22  relieve the symptoms; and other measures to obtain relief of
23  symptoms; and any other factors.  Although, when it is read as a
24  whole, there are various explanations given.  The summary of
25  what the Administrative Law Judge found is at the bottom of page

1   19 and the top of page 20, and there's also explanation on 18,
2   which observes what plaintiff's activities of daily living are
3   and the conclusion of the Administrative Law Judge that they do
4   not support the allegations of the plaintiff regarding
5   intensity, persistence, and limiting effect of his conditions.
6   Plaintiff has a very broad array of activities of daily living
7   that don't support his claims of extreme limitations.
8           I don't find any error in the evaluation of
9   plaintiff's subjective symptomology and I don't conclude that a
10  reasonable factfinder would have to conclude otherwise.
11          The last argument is really derivative of the prior
12  claims, the claim being that at step five, the residual
13  functional capacity -- there should have been a finding of
14  disability if the residual functional capacity had been more
15  closely aligned with therapist O'Connor's opinion.
16          So in summary, I find that correct legal principles
17  were applied and the resulting determination is supported by
18  substantial evidence.  I'll grant judgment to the defendant and
19  order dismissal of plaintiff's complaint.
20          Thank you, both, for excellent presentations.  I hope
21  you enjoy the rest of your summer.
22          MS. CHADWICK:  Thank you.  You, too, your Honor.
23          MR. SHAMSOONDAR:  Thank you, your Honor.  You, as
24  well.
25          (Time noted:  12:01 p.m.)

```
 1
 2
 3
 4                CERTIFICATE OF OFFICIAL REPORTER
 5
 6
 7         I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 8   NYRCR, Official U.S. Court Reporter, in and for the United
 9   States District Court for the Northern District of New York, DO
10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
11   States Code, that the foregoing is a true and correct transcript
12   of the stenographically reported proceedings held in the
13   above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
15   the United States.
16
17           Dated this 14th day of July, 2023.
18
19           s/ Hannah F. Cavanaugh_____
20           HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
21           Official U.S. Court Reporter
22
23
24
25
```